## BERETH v. SPARKS.
### No. 4481.

Circuit Court of Appeals, Seventh Circuit.
July 8, 1931.

Rehearing Denied Sept. 25, 1931.

James D. Shaw and A. J. Whitcomb, both of Milwaukee, Wis., for appellant.

M. G. Eberlein, of Shawano, Wis., for appellee.

Before ALSCHULER,° EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

Appellee brought this suit in equity to secure a direction to the appellant that a certain judgment, rendered by a state court of Wisconsin in her favor against appellant, be given priority in payment.

The court made a special finding of facts and rendered conclusions of law as follows:

"First: That the plaintiff on the 28th day of January, 1925, was the owner and in possession of a large stock of merchandise and fixtures located in a store building belonging to her at the City of· Crandon, Forest County, Wisconsin.

"Second: That on said date the sheriff of Forest County, Wisconsin, in an action commenced by the First National Bank of Crandon, a National Banking Institution, in an action against James F. Sparks, caused the said merchandise and fixtures to be attached.

"Third: That on April 1, 1925, the above named plaintiff, Nannie Sparks, commenced an action of Replevin in the Circuit Court of Forest County against the sheriff of Forest County and the First National Bank of Crandon to recover possession of the said stock of merchandise and fixtures, together with the damages for the unlawful taking and detention.

"Fourth: That the First National Bank of Crandon became insolvent on April 22, 1925, and Herbert Pearson was appointed by the Comptroller of Currency as Receiver for said bank and intervened in the said Replevin action, filed an answer and defended the attachment of the said stock of merchandise and fixtures.

"Fifth: That the above named defendant James B. Bereth is the successor to the said Herbert Pearson, as Receiver of said Bank, and appeared upon the trial of the said Replevin action and joined with the sheriff of Forest County in making a defense thereto.

"Sixth: That the above named plaintiff, Nannie Sparks, prevailed in said action and on the 14th day of May, 1929, recovered a judgment in the Circuit Court of Forest

County against James B. Bereth, as Receiver for the First National Bank of Crandon, because of said unlawful attachment, in the sum of $25,118.53, which judgment was affirmed by the Supreme Court of the State of Wisconsin.

"Seventh: That due demand has been made by the plaintiff upon the said James B. Bereth, as Receiver for the First National Bank of Crandon, for the payment of said judgment in full as an administration expense, and the said Receiver has refused to pay the same in full, denies that it is an administration expense, and offers to pay the said claim on the same basis as other general creditors of the First National Bank of Crandon are being paid.

"Eighth: That there are sufficient funds undistributed in the hands of the Receiver to pay in full all administration expenses, including the said judgment, together with interest thereon, and costs of this action.

"Ninth: That the said judgment against James B. Bereth, as Receiver for said First National Bank of Crandon, is an administration expense. And I find as

"Conclusions of Law.

"First: That said judgment in the sum of $25,118.53 against James B. Bereth, as Receiver for the First National Bank of Crandon, in favor of the above named plaintiff, Nannie Sparks, is an administration expense.

"Second: That as such administration expense the plaintiff is entitled to have the Comptroller of the Currency and the Receiver in this action pay the said judgment in full and give it priority over the claims of the ordinary creditors.

"Third: That the plaintiff is entitled to a decree directing that in the distribution of the trust funds in the hands of James B. Bereth, as Receiver for the First National Bank of Crandon, the said judgment of the plaintiff, Nannie Sparks, be paid in full as an administration expense, together with the costs and disbursements of this action."

Judgment was rendered accordingly, and this appeal is prosecuted from that judgment.

Appellant contends (1) that the judgment awarded by the circuit court of Forest county, Wisconsin, for the tort of the First National Bank, committed prior to the receivership, does not constitute an administration expense, and is to be paid only ratably with other claims; (2) that it is of no significance that the judgment of the state court is in form against the receiver, for, at his election, he might defend in the name of the bank or as its receiver, and in either case the judgment would merely fix the amount of the claim to be recognized by the receiver for pro rata payment; and (3) that the state court was without jurisdiction to enter a judgment against the receiver for the supposed tort of the receiver.

Each of these claims is based upon the assumption that the receiver, as such, was guilty of no wrong, and that the tort referred to was committed by the bank prior to the appointment of the receiver. The theory of the bill of complaint, however, is that the receiver ratified the tort of the bank and persisted in the defense of the bank's position relative thereto, all to the detriment and damage of appellee, and that, by reason thereof, the receiver became a joint tort-feasor ab initio. The findings of the court proceed, and the conclusions of law are based upon this theory. There was at least substantial evidence adduced and facts found to warrant the court in concluding that appellant was a joint tort-feasor, and with this conclusion we are not at liberty to interfere, if we were so inclined.

The cases cited by appellant merely hold that where a judgment is entered in form against the receiver, upon contractual obligations owing or for torts committed by the insolvent, the receiver, as such, is not personally liable, nor can such judgment be considered as an administration expense. Those cases proceed upon the theory that the receiver was guilty of no wrong, and merely defended the actions in order to obtain the judgment of a court as to the amount of the claims.

In the instant case, however, substantial evidence was introduced to the effect that the receiver was a joint tort-feasor ab initio, and in such event the following principles of law are applicable:

Damages for injuries to persons or property during the receivership, caused by the torts of the receiver's agent and employees, are classed as a part of the operating expenses of the corporation. Such expenses are to be paid and are payable out of the income of the property, if it is sufficient; or, if necessary, out of the corpus. Bartlett v. Cicero Light, Heat & Power Co., 177 Ill. 68, 52 N. E. 339, 42 L. R. A. 715, 69 Am. St. Rep. 206; Ratcliff v. Adler, 71 Ark. 269, 72 S. W. 896; Cole v. Edwards, 52 Neb. 711, 72 N. W. 1045; First Nat. Bank of Pawnee City v. Avery Planter Co., 69 Neb. 329, 95 N. W. 622, 111 Am. St. Rep. 541; Frick-Reid Supply Co. v. Hunter, 47 Okl. 151, 148

P. 83; Cook v. Hopper, 23 Mich. 511; Brown v. Winterbottom, 98 Ohio St. 127, 120 N. E. 292, 3 A. L. R. 1465; Koch v. Peters, 97 Wis. 492, 73 N. W. 25; Adams v. Savery House Hotel Co., 107 Wis. 109, 82 N. W. 703; Sparks v. Kuss et al., 195 Wis. 378, 216 N. W. 929, 218 N. W. 208; Cowdrey v. Galveston, H. & H. Ry. Co., 93 U. S. 352, 23 L. Ed. 950; McNulta v. Lochridge, 141 U. S. 327, 12 S. Ct. 11, 35 L. Ed. 796; 23 R. C. L. p. 86; 34 Cyc. (Receivers) 352, 354, subdivision D.

Where a receiver of a national bank is appointed by the comptroller of currency, a judgment entered after the appointment, in an action begun in a state court before the appointment, is binding upon the receiver as well as upon the bank. Riehle v. Margolies, 279 U. S. 218, 49 S. Ct. 310, 73 L. Ed. 669.

 That the state court had a right to render a judgment against the receiver for the tort of the bank committed before the receivership cannot be denied; and it is likewise clear that the same court had a right to include in that judgment the damages to appellee which were occasioned by the wrongful conduct of the receiver, if any. That the state court included both items in its judgment we think there can be no doubt, for it rendered judgment for damages covering the entire period from the date of the attachment until the time of the judgment. It is quite certain that the bank committed no overt wrong after the receiver was appointed, for it then had no power to act, other than through the receiver. The wrong which it had caused by the attachment suit was a thing for which the receiver, as such, could not be held liable, unless he ratified it. But it was his duty, after qualifying as receiver, upon becoming acquainted with the facts to do all within his power to extricate the bank from the perilous situation in which it had placed itself. He not only did not do so, but he, as receiver, persisted in defending the bank's original position, and vigorously contested appellee's title to the property throughout the entire period of litigation. Under the decisions above cited, we think the receiver was clearly a joint tort-feasor ab initio, and that the state court had jurisdiction to render such judgment as it did.

 The law as declared by the Supreme Court of Wisconsin on appeal from the judgment of the state court, Sparks v. Kuss et al., 195 Wis. 378, 216 N. W. 929, 218 N. W. 208, is conclusive as to the amount and kind of judgment. From the record of that case, which is before us, we think it quite obvious

that the judgment was rendered against the receiver as a joint tort-feasor. Of course, neither the Supreme Court nor the state court of Wisconsin decided that appellee's claim was a part of the operating expenses of the receiver. That was a question to be decided by the comptroller of the currency and the receiver, subject to review by the District Court. The records of the litigation in the state courts of Wisconsin, and the circumstances surrounding that litigation, were in evidence before the District Court, and we think that court properly held that appellee's claim constitutes an administration expense and is entitled to priority over general creditors. In view of these conclusions, the court's rulings as to the admissibility of evidence, and its refusal to make certain findings of fact as requested by appellant, were proper.

Affirmed.